**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**


**MATTHEW QUINN MASON,**

        Petitioner,

**v.**                               **CIVIL ACTION NO. 3:11-CV-60**
                                      **CRIMINAL ACTION NO. 3:08-CR-30-02**
                                      **(BAILEY)**


**UNITED STATES OF AMERICA,**

        Respondent.


## ORDER ADOPTING REPORT AND RECOMMENDATION

**I.**    **Introduction**

       On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert [Civ. Doc. 32; Crim. Doc. 229], filed January 15, 2013.  In that filing, the magistrate judge recommends that this Court deny petitioner Matthew Quinn Mason's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civ. Doc. 1; Crim. Doc. 153], filed July 22, 2011.

       Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, this Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  ***Thomas v. Arn***, 474 U.S. 140,

150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); ***Snyder v. Ridenour***, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R&R were due within fourteen (14) days of the filing of the R&R. Defendant Mason timely filed his Objections [Crim. Doc. 235] on January 29, 2013. Accordingly, this Court will undertake a *de novo* review of those portions of the magistrate judge's findings to which objection is made. This Court will review the remainder of the R&R for clear error.

## II.  Background

### A.  Ray and Clinkscale Federal Drug Prosecution

On January 19, 2006, Cecil Ray, Jr., a/k/a "Esco," and Darryl Fontane Clinkscale, a/k/a "D-Nice," were named in an eleven-count Indictment returned by the Grand Jury sitting in the Northern District of West Virginia, Martinsburg. Count One charged that in January 2004, Ray, Clinkscale, and others conspired to possess with the intent to distribute and to distribute in excess of fifty grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Count Eight charged that on April 13, 2005, Ray and another named defendant aided and abetted each other to distribute approximately 1.95 grams of crack cocaine within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 860, and 841(b)(1)(C). Count Nine charged that on April 13, 2005, Clinkscale possessed with the intent to distribute approximately 6.42 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

On March 2, 2006, Clinkscale pled guilty to Count Nine pursuant to a written plea

agreement.  In that plea agreement, Clinkscale promised to be completely forthright and truthful with regard to all inquiries made of him and to give signed, sworn statements and grand jury and trial testimony relative thereto.  On June 16, 2006, Clinkscale was sentenced to seventy (70) months' imprisonment to be followed by four (4) years of supervised release. The Federal Bureau of Prisons subsequently designated Clinkscale to serve his sentence at Federal Correctional Institution ("FCI") Fairton, located in Fairton, New Jersey.

On March 22, 2007, the Government listed Clinkscale as a probable witness that could testify to historical drug information concerning defendant Ray.  In August 2007, Clinkscale was transferred via writ from FCI Fairton and housed at the Eastern Regional Jail ("ERJ") in Martinsburg, West Virginia, pending Ray's trial.  On the second day of trial, August 30, 2007, Clinkscale testified on behalf of the Government against Ray.  The same day, the jury returned a verdict of guilty on Count One and Count Eight.  On November 30, 2007, Ray was sentenced to life in prison on Count One and forty (40) years on Count Eight, to be served concurrently.

Meanwhile, on October 12, 2007, the Government moved to reduce Clinkscale's 70-month sentence to 35 months, citing his testimony as substantial assistance in obtaining Ray's conviction.  On October 25, 2007, this Court granted the Government's motion, and on October 31, 2007, reduced Clinkscale's sentence to 35 months.  Clinkscale served his 35-month sentence and was released in March 2008.

### B. Mason Federal Witness Retaliation Prosecution

### 1. Pretrial Proceedings

On May 20, 2008, petitioner Matthew Quinn Mason, a/k/a "Q," was named in a three-count Indictment [Crim. Doc. 1] with Travis Jackson Latta returned by the Grand Jury sitting in the Northern District of West Virginia, Martinsburg Division. Count One charged that on April 30, 2008, Mason and Latta conspired to attempt to kill Clinkscale with the intent of retaliating against him for his testimony at Ray's trial, in violation of 18 U.S.C. §§ 1513(f) and 1513(a)(1)(A). Count Two charged that on April 30, 2008, Mason and Latta aided and abetted each other in knowingly attempting to kill Clinkscale with the intent of retaliating against him for his testimony at Ray's trial, in violation of 18 U.S.C. § 1513(a)(1)(A). Count Three charged that on April 30, 2008, Mason and Latta aided and abetted each other in knowingly engaging in conduct, i.e., the discharge of a firearm at Clinkscale while he drove his vehicle and causing damage to his vehicle, with the intent of retaliating against Clinkscale for his testimony at Ray's trial, in violation of 18 U.S.C. § 1513(a)(1)(A).

On August 7, 2008, Lary D. Garrett was appointed to represent Mason after previous appointed counsel was permitted to withdraw [Crim. Doc. 46]. Trial was subsequently continued until October 28, 2008 [Crim. Doc. 53]. On October 15, 2008, the Government listed Clinkscale as a probable witness to testify to the events of April 30, 2008 [Crim. Doc. 59]. At the pretrial conference on October 17, 2008, this Court rescheduled trial to commence on October 27, 2008 [Crim. Doc. 79].

On Saturday, October 25, 2008, the Government noted its intent to use evidence of bad acts pursuant to Federal Rule of Evidence 404(b) consisting of evidence of events and actions of Mason which occurred when he and Clinkscale were incarcerated together within the same pod at the ERJ for a period of three weeks to one month during August of 2007 [Crim. Doc. 78]. The Government proffered that Clinkscale would testify that Mason once threw him a bar of soap bearing the inscription, "That guy from Philly is a snitch." The Government also indicated that Clinkscale would testify that Mason was privy to a conversation between Ray and Clinkscale the night before Ray's trial wherein Ray attempted to coach Clinkscale on his upcoming testimony. Finally, the Government noted that Clinkscale would testify that Mason was privy to an announcement made at the ERJ immediately following Ray's trial, by the inmate who had inscribed the soap message, that Clinkscale had just come from testifying against Ray. According to the Government, this evidence would be relevant to proving that Mason knew Clinkscale had testified against Ray and that Mason intended to retaliate against Clinkscale for that reason on August 30, 2008.

**2.     Trial**

### i.      Pretrial Objection and Opening Statements

On October 27, 2008, shortly before the commencement of trial, defense counsel Garrett objected to the Government's proposed Rule 404(b) evidence, as described above. This Court overruled the objection, finding that the proffered evidence would tend to prove that Mason had knowledge that Clinkscale testified against Ray.

During its subsequent opening statement, the Government framed the crux of its case for the jury as follows:

> So, the issue that's probably going to be most at – up for consideration during this trial is the intent in this case. You need to think about whether – what Mr. Mason did in following behind Mr. Clinkscale was done for the purpose of retaliating against him for having testified in a federal trial.

([Crim. Doc. 133] at 18).

### ii.    Testimony of Clinkscale

The Government then called Clinkscale as its first witness. After testifying to the three events at the ERJ that the Government had outlined in its notice of Rule 404(b) evidence, Clinkscale turned to the night of April 30, 2008. That night, Clinkscale said, he was working a 10:00 p.m. to 7:00 a.m. shift at the Wal-Mart on Foxcroft Avenue, in Martinsburg, West Virginia. Shortly before 2:00 a.m., Mason and another individual approached him. The other individual asked Clinkscale, "So, what, you work at Wal-Mart now?" Mason and his acquaintance then walked off to the sporting goods section. A few minutes later, at around 2:00 a.m., Clinkscale clocked out for his regular lunch break. When he pulled out, Mason and two passengers followed him. En route to his apartment at Martins Landing, Clinkscale was able to lose Mason. Upon parking his vehicle, and turning the headlights off, Mason pulled in and said, "There he go right there." While Clinkscale pulled out and sped away, he heard about four or five gunshots. Mason followed Clinkscale but then turned onto the interstate. Clinkscale then returned to Martins Landing and called the police. When the police arrived, Clinkscale provided a statement in which he described the vehicle as a silver Lincoln Town Car.

The Government then published three clips of surveillance video from Wal-Mart. The first clip showed Clinkscale being approached inside the store by Mason and another individual. The second clip contained footage of the Lincoln Town Car arriving at the store and Mason and the other individual exiting the vehicle and entering the store. The third clip depicted Clinkscale leaving the store and being followed by Mason and two other individuals in the Lincoln Town Car. As the last topic of direct examination, Clinkscale described the damage done to his car by the gunfire.

On cross-examination, defense counsel Garrett challenged Clinkscale's story that Mason had overheard Ray attempting to coach Clinkscale's testimony at the ERJ because Clinkscale had not mentioned this conversation in testifying at Ray's trial or before the Grand Jury. Garrett also questioned why Clinkscale did not identify Mason in the statement he gave law enforcement upon their initial arrival at Martins Landing.

On redirect examination, the Government elicited testimony from Clinkscale that though he did not identify Mason in his original statement, he did identify Mason as the driver in a subsequent interview by law enforcement the same day. During that second interview, Clinkscale said he was shown and identified Mason in a photograph. Clinkscale was then excused as a witness.

### iii.    Testimony of Latta

Next, the Government called Latta to testify about the events of April 30, 2008. According to Latta, Mason had agreed to drive him to Hagerstown, Maryland. On the way, Mason stopped at the Wal-Mart store in Martinsburg, and he and another passenger named "Tank," t/n/u, entered the store while Latta remained in the front passenger seat.

When Mason and Tank returned with bandanas, Tank asked Mason to follow Clinkscale because Clinkscale had "told on him." Mason followed. When they lost track of Clinkscale, Tank suggested that they drive to Martins Landing. On the way, Tank was cursing Clinkscale, whom he called "D-Nice" and referenced as being from Philadelphia. Upon finding Clinkscale parked at Martins Landing, Tank rolled down his window and discharged three or four shots from his Ruger .22 caliber revolver but missed Clinkscale's vehicle. When Mason followed Clinkscale out of Martins Landing, Latta fired his 9-millimeter High Point at Clinkscale's vehicle. Latta explained that he shot at Clinkscale "[b]ecause I was – I was hallucinating off of boat, which is marijuana and PCP, at the time." ([Crim. Doc. 235-1] at 21). Afterwards, Tank told Mason and Latta that Clinkscale had "told on Esco." Shortly thereafter, Terrance Washington called Mason and asked for a ride. Upon picking up Washington, Deputy Butcher pulled in behind their vehicle. When Latta, Mason, and Tank fled, Latta took both firearms with him, wrapped in his sweatshirt.

The Government then impeached Latta's testimony with the statement he gave Detective Doyle on the morning of the shooting. Latta agreed that he had then said Mason directed him to shoot at Clinkscale and that Mason had told him that Clinkscale had put Ray in prison. Upon publishing Latta's recorded statement, this Court instructed the jury that the statement was used only to impeach Latta and not as evidence against Mason. Latta was then excused without cross-examination.

### iv.   Judicial Notice, Motion for Judgment of Acquittal, Closing Arguments, Jury Instructions, and Verdict

The Government moved this Court to take judicial notice of Ray's conviction and

sentence. After this Court granted the motion, the Government rested its case. At that time, Garrett moved this Court for a judgment of acquittal. In denying the defendant's motion, this Court found that, viewing the evidence in a light most favorable to the Government, there had been sufficient evidence presented from which a rational jury could conclude that Mason intended to retaliate against Clinkscale for testifying against Ray. Specifically, this Court identified those pieces of evidence as Clinkscale's testimony regarding the soap message delivered by Mason and the conversation with Ray in the presence of Mason, emphasizing that direct evidence of intent is not required. Finally, this Court explained that a co-conspirator need not be aware of all the details of a conspiracy and that, as a co-conspirator, Mason could be found guilty on the other counts.

Like in its opening statement, the Government again drew attention to Mason's intent in its closing argument:

> And as I told you when I gave my opening statement in the case, the issue in the case is why did this happen? What was the intent for Mr. Mason driving a car following Mr. Clinkscale from his work to his house and the two persons who fired guns from that vehicle shooting at Mr. Clinkscale.

([Crim. Doc. 134] at 60). In arguing that the evidence showed Mason's intent was to retaliate against Clinkscale for testifying against Ray, the Government referenced the soap message and the Clinkscale-Ray conversation at the ERJ. In addition, the Government argued that Latta's testimony that the shooting was Tank's idea was impeached by his statement to Detective Doyle. In this latter regard, the Government emphasized that the Latta statement was not evidence but that it could be used to weigh the credibility of his trial

testimony.

In his closing argument, Garrett contended that the Government had failed to prove the element of intent, emphasizing that Latta's statement was not evidence. In rebuttal, the Government stressed that Mason could be found guilty of the conspiracy in Count One even without knowing all of the details of the conspiracy.

Upon completion of the closing arguments, this Court instructed the jury as to the applicable law. Regarding intent, this Court instructed the jury as follows:

> Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from surrounding circumstances. You may consider any statement made and act done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.

([Crim. Doc. 86] at 21). After deliberations, the jury returned a verdict of guilty on each count [Crim. Doc. 88]. By Judgment Order dated October 31, 2008 [Crim. Doc. 92], this Court ordered the defendant to file any post-trial motions by November 7, 2008, and directed the United States Probation Office to undertake a presentence investigation of Mason and to prepare a Presentence Investigation Report ("PSR").

### 3.    Post-Trial Motions Through Direct Appeal

#### i.    Post-Trial Motions

On November 5, 2008, the defendant moved for a new trial and for a judgment of acquittal [Crim. Docs. 93 & 94]. In requesting a new trial, defense counsel Garrett argued

that the verdict was not supported by substantial evidence.  In asking for a judgment of acquittal, Garrett argued that the evidence elicited at trial was insufficient to establish the requisite element that Mason and his co-conspirators' actions were motivated by a desire to retaliate against Clinkscale.  By Order dated December 5, 2008 [Crim. Doc. 99], this Court denied both motions.  In denying a new trial and judgment of acquittal, this Court found that the following evidence adduced at trial constituted substantial evidence that supported the verdict:

1.      Defendant was incarcerated at the Eastern Regional Jail (ERJ) at the same time Clinkscale was brought back to ERJ as a witness against Cecil Ray, Jr.;

2.      Defendant was aware of Clinkscale's role as a prosecution witness and had advised Clinkscale of this knowledge by giving him a "soap message" calling him a "snitch;"

3.      Defendant was present when Ray had a conversation with Clinkscale during which Ray tried to convince Clinkscale to change his testimony in Ray's favor;

4.      Significantly, this was Clinkscale's *first and only* connection with defendant prior to April 30, 2008;

5.      On April 30, 2008, Clinkscale was at his place of employment in the early morning hours when he ran into defendant and another individual;

6.      Significantly, Clinkscale had never given any evidence to the police or testified about defendant, "Tank" or Travis Latta;

7.      Eventually, with defendant driving in pursuit of Clinkscale, both Latta and the third individual, "Tank," shot at Clinkscale after defendant stated "There he is;" and

8.     Not long afterward, defendant, Latta and another were stopped by a Berkeley County Deputy Sheriff.  As the vehicle came to a stop, all but one of the occupants fled the scene.

([Crim. Doc. 99] at 8-9) (emphasis in original).  On January 18, 2009, this Court ordered that Mason's sentencing hearing be held on February 23, 2009 [Crim. Doc. 101].

### ii.     Sentencing

This Court sentenced Mason to 95 months' imprisonment to be followed by four years of supervised release.  This Court reasoned that while this was Mason's first felony, he nonetheless had "an extensive criminal history, involving weapons, obstruction of an officer, involvement in controlled substance[s]." ([Crim. Doc. 135] at 13).  This Court further reasoned that while Mason was not the shooter, he was the driver who identified Clinkscale and continued to follow him after the first shots were fired, making Mason "equally as culpable, if not more culpable, than anybody else in the vehicle."  (Id. at 14).  When asked whether he wanted the Clerk to file a notice of appeal on his behalf, Mason answered in the affirmative.  The Clerk filed Mason's notice of appeal the same day [Crim. Doc. 124].

### iii.     Direct Appeal

On April 16, 2009, the United States Court of Appeals for the Fourth Circuit appointed trial counsel, Lary Garrett, to represent Mason on appeal [Crim. Doc. 129].  Through counsel Garrett, Mason asserted two claims on direct appeal: (1) this Court erred in denying his motion for judgment of acquittal, because the evidence was insufficient to support his convictions; and (2) this Court abused its discretion in admitting evidence of

prior interactions between Mason and Clinkscale. In an unpublished *per curiam* Opinion dated April 16, 2010 [Crim. Doc. 145], the Fourth Circuit rejected both claims. In rejecting the insufficiency of evidence claim, the Fourth Circuit relied in part on Clinkscale's testimony:

> Clinkscale further testified to the three (and only three) interactions he had with Mason prior to the incident underlying this appeal. These exchanges, which occurred while both men were in custody immediately prior to Ray's trial, all centered around Clinkscale's testimony against Ray.

(Id. at 4). The Fourth Circuit then rejected Mason's claim that this Court abused its discretion in admitting evidence of these three interactions, explaining:

> Mason's basic defense was that he participated in this crime for no reason. Therefore, evidence of Mason's prior interactions with Clinkscale, which established Mason's knowledge of Clinkscale's role as a federal witness, was admissible because it was relevant and probative of an issue other than Mason's character.

(Id. at 6). On May 28, 2010, Mr. Garrett moved the Fourth Circuit for leave to withdraw from any further representation of Mason in this matter, which the Fourth Circuit granted on June 18, 2010.

## C.    Collateral Review Proceedings

On July 22, 2011, Mason filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civ. Doc. 1; Crim. Doc. 153], which contains three claims. Claim One asserts that Garrett provided ineffective

assistance of counsel at the trial level. Mason outlines fifteen grounds to support this claim, namely that Garrett: (1) failed to investigate and prepare his defense; (2) failed to retain a forensics expert; (3) failed to challenge the Government's suppression of exculpatory evidence; (4) failed to object to the jury selection process and conduct a proper voir dire; (5) failed to object to hearsay testimony; (6) failed to object to prosecutorial misconduct; (7) failed to object to prejudicial, irrelevant testimony and collateral evidence; (8) failed to properly cross-examine witnesses; (9) improperly denied his right to testify; (10) failed to object to evidence referencing his right to remain silent; (11) failed to effectively object to or challenge the presentence report; (12) failed to move for a downward departure or argue for a reduction of sentence; (13) failed to provide him with case file; (14) failed to preserve conflict of interest issues; and (15) failed to convey a day-of-trial plea offer ("Grounds One through Fifteen"). Claim Two alleges that Garrett also provided ineffective assistance on appeal. Claim Three asserts that Mason is actually innocent of the crimes for which he was convicted. Mason also requested an evidentiary hearing and the appointment of counsel.

The Government responded to each of these claims on September 20, 2011 [Crim. Doc. 164]. Among other things, the Government argued that Mason's failure to investigate claim of ineffective assistance is vague and factually insufficient and that an August 14, 2008, letter shows that Garrett thoroughly communicated a plea offer to Mason. In a Reply [Crim. Doc. 173] filed November 9, 2011, Mason expanded on his failure to investigate claim as follows:

> Counsel failed to get evidence that was available to show that [Clinkscale] was not telling the truth. Clinkscale provided false testimony and counsel failed to challenge this pertaining to the meettting [*sic*] at the Regional jail

with him and Ray however, I was in lock up and not a part of general population and not available to mix with them at the jail.

(Id. at 3).

<u>**Original Report and Recommendations**</u>

On December 5, 2011, Magistrate Judge Seibert entered the original R&R [Civ. Doc. 8; Crim. Doc. 175], recommending that this Court deny Mason's § 2255 motion. The magistrate judge recommended that this Court deny relief on Mason's failure to investigate ground because Mason had not specified "what counsel could have obtained" had he more thoroughly investigated potential impeachment evidence of Clinkscale. (Id. at 7). The magistrate judge recommended that this Court deny relief on Mason's claim that Garrett failed to convey to him a day-of-trial plea offer because the record contains an August 14, 2008, letter from Garrett to Mason, outlining the pros and cons of a recent plea offer. (Id. at 19).

Mason's objections were due on December 27, 2011, pursuant to 28 U.S.C. § 636(b)(1). When no objections were filed by that date, this Court reviewed the R&R for clear error and found none. Accordingly, on December 30, 2011, this Court adopted the R&R and denied Mason's § 2255 motion [Civ. Doc. 10; Crim. Doc. 177]. On January 17, 2012, Mason moved this Court for a certificate of appealability, stating at the bottom of his motion that "[b]ased on [his] being placed in special housing, [he] had no opportunity to object to the magistrate's opinion and recommendation and asks for leave to do so." ([Civ. Doc. 12; Crim. Doc. 179] at 1). Mason noted his appeal to the Fourth Circuit the same day [Civ. Doc. 13; Crim. Doc. 181]. On January 30, 2012, this Court denied Mason a certificate

of appealability, finding that Mason had "failed to make 'a substantial showing of the denial of a constitutional right.'" ([Civ. Doc. 16; Crim. Doc. 186] at 1) (quoting 28 U.S.C. § 2253(c)(2)). On February 13, 2012, Mason noted his appeal of the decision to deny him a certificate of appealability [Civ. Doc. 19; Crim. Doc. 188].

In an unpublished *per curiam* Opinion dated June 5, 2012 [Civ. Doc. 21; Crim. Doc. 192], the Fourth Circuit vacated this Court's Order Adopting Report and Recommendation and remanded. On remand, the Fourth Circuit directed this Court to "address Mason's contention regarding his failure to object and make any factual findings necessary to resolve whether to allow Mason to file objections out of time." (Id. at 9). In reaching its decision, the Fourth Circuit first found that this Court's "silence in the face of Mason's proffered excuse for his failure to object . . . constrained it to hold that [this Court's] resolution of this pivotal procedural issue [was] debatable." (Id. at 6). Next, the Fourth Circuit identified two grounds for ineffective assistance that have "arguable merit." (Id. at 7). "First is Mason's contention that Garrett failed to investigate evidence that would have impeached the Government's key witness, Darryl Clinkscale, the victim of the retaliatory conduct." (Id.). Second is "Mason's contention that Garrett failed to convey to him the Government's plea offer(s)." (Id. at 8).

Addressing the first contention, the Fourth Circuit disagreed with this Court that Mason had failed to specify what defense counsel Garrett could have obtained by a more thorough investigation:

> In his reply to the Government's response, Mason clearly asserted that, had Garrett investigated the matter, he would have discovered that Mason was not housed in the jail's general population at the time of the alleged jailhouse

16

interactions between himself and Clinkscale. If true, this would have plainly impeached Clinkscale's testimony, which was critical to the Government's case. Based on the record presently available and because of the crucial role Clinkscale's testimony played in satisfying the Government's burden of proof, we conclude that this is a debatable claim of the denial of a constitutional right.

(Id. at 7-8) (citation omitted).

Concerning the second contention, the Fourth Circuit questioned how this Court could propose to reject Mason's claim regarding a plea allegedly offered on October 27, 2008, based entirely on a letter dated August 14, 2008:

It is impossible to evaluate whether the August 14 letter actually conveyed the then-available plea offer, as the Government contends, or whether it simply offered a generalized discussion of Mason's sentencing exposure, as Mason contends, because the letter is not part of the record. And while it is not entirely clear from the record, if indeed Mason contends that the Government made multiple plea offers that were not communicated to him, particularly one on the day of trial, then exclusive reliance on the August 14 letter would be insufficient to defeat this claim. These uncertainties, coupled with the Supreme Court's recent decision in *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012), holding that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and that counsel's failure to so communicate amounted to constitutionally deficient performance, compel our conclusion that this too is a debatable claim of the denial of a constitutional right.

(Id. at 8-9) (footnote omitted).

On remand, this Court granted Mason thirty (30) days' leave until July 6, 2012, to

file objections to the R&R [Crim. Doc. 194].

On July 13, 2012, Mason filed a Motion to Appoint Counsel [Crim. Doc. 196], a Motion to Compel [Crim. Doc. 198], and a Motion for Extension [Crim. Doc. 200] of the July 6, 2012, deadline to file objections to the R&R. Mason filed his Objections [Civ. Doc. 24; Crim. Doc. 202] out of time on July 17, 2012. As stated above, this Court nevertheless considered Mason's Objections and conducted a *de novo* review of the portions of the R&R to which he objected.

## Post-Remand Review of Report and Recommendations

### A.    Clear Error Review

Mason did not state objections to the recommendations of Magistrate Judge Seibert on Grounds Two, Three, Four, Five, Six, Seven, Eight,[1] Nine, Ten, and Fourteen of Claim One; Claim Two; and Claim Three. Having reviewed those recommendations for clear error, and finding none, this Court dismissed these claims.

### B.    *De Novo Review*

Mason objected to the recommendations of Magistrate Judge Seibert on Grounds One, Eleven, Twelve, Thirteen, and Fifteen of Claim One. Accordingly, this Court conducted a *de novo* review of those grounds, beginning with Grounds Eleven, Twelve, and Thirteen and ending with Grounds One and Fifteen. This Court dismissed all but Grounds

---

[1]To the extent that Ground Eight, which generally claims that Garrett failed to conduct proper cross-examinations, relates to the cross-examination of Clinkscale, this Court found it subsumed in Ground One, which claims that Garrett failed to properly investigate and discover evidence that could have been used to impeach Clinkscale on cross-examination.

One and Fifteen.  This Court then referred these two matters back to Magistrate Judge Seibert to conduct an evidentiary hearing and to issue a new R&R stating his findings. Magistrate Judge Seibert conducted the evidentiary hearing on November 27, 2012, and on January 15, 2013, the magistrate judge reissued his R&R again recommending dismissal of the remaining two grounds.  As previously noted, the defendant, now represented by Assistant Public Defender Brendan Leary, filed timely Objections [Crim. Doc. 235] on January 29, 2013.

At the November 27 evidentiary hearing, several exhibits were offered, and several witnesses testified.  Petitioner offered, as did the Government, exhibits which showed the housing arrangements at the Eastern Regional Jail ("ERJ") for the petitioner, Clinkscale, and Cecil Ray, for the days leading up to Ray's trial.  Moreover, the Government offered several pictures of Section 5 of A-pod at the ERJ, and letters from the petitioner's counsel. Finally, the Government produced the written plea agreement offered by the Government, and a transcript from a pretrial hearing where the petitioner wanted new counsel because he claimed that his first appointed lawyer was too insistent on him pleading to the charge, and that he did not want to plead guilty. Petitioner testified at the hearing, as did his counsel, Mr. Garrett, and David E. Bittinger, Chief Correctional Officer at the ERJ.

### A. Standard of Review

The instant petition asserts that Mason's counsel was ineffective.  To demonstrate ineffective assistance of counsel, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness," and that the error was "prejudicial to the defense" such that "there is a reasonable probability that, but for counsel's

19

unprofessional errors, the result of the proceeding would have been different." ***Stickland***

***v. Washington***, 466 U.S. 668, 688 (1984). If a defendant shows no prejudice from the

alleged ineffectiveness of counsel, courts need not address counsel's performance. ***Fields***

***v. Attorney Gen. of Maryland***, 956 F.2d 1290, 1297 (4th Cir.), *cert. denied*, 506 U.S. 885

(1992). Accordingly, this Court will review the prejudice component first.

### 1. Ground One: Failure to Investigate

As Ground One, Mason claims that Garrett was ineffective for failing to properly

investigate, generally alleging that "[c]ounsel failed to properly diligently investigate

movant's criminal case by questioning witnesses, visiting crime scene and other locations,

examining physical evidence, canvassing [*sic*] and marshalling [*sic*] facts and evidence in

defense of the movant." ([Civ. Doc. 1-1; Crim. Doc. 153-1] at 1-2). In his Reply, Mason

narrowed this claim by alleging that "[c]ounsel failed to get evidence that was available to

show that [Clinkscale] was not telling the truth. Clinkscale provided false testimony and

counsel failed to challenge this pertaining to the meettting [*sic*] at the Regional jail with him

and Ray however, I was in lock up and not a part of general population and not available

to mix with them at the jail." ([Crim. Doc. 173] at 3). Magistrate Judge Seibert nevertheless

recommended dismissal of Ground One, finding that Mason failed to specify what Garrett

would have found if he properly investigated.

As outlined above, the Fourth Circuit subsequently disagreed with this Court based

upon Mason's specific allegation in his Reply that Garrett would have discovered that

Mason was not in the general population at the time of the interactions to which Clinkscale

testified at trial. In explaining its disagreement, the Fourth Circuit indicated that Mason's

claim is nevertheless highly fact-dependent:

> _If true_, this would have plainly impeached Clinkscale's testimony, which was critical to the Government's case. _Based on the record presently available_ and because of the crucial role Clinkscale's testimony played in satisfying the Government's burden of proof, we conclude that this is a debatable claim of the denial of a constitutional right.

([Civ. Doc. 21; Crim. Doc. 192] at 7-9) (emphasis added).

Therefore, upon careful review of the record, including the Fourth Circuit's decision, this Court concluded that an evidentiary hearing would be necessary to determine the facts underpinning Mason's claim that Garrett would have discovered that Mason was not in the general population at the time of the interactions to which Clinkscale testified at trial. Accordingly, this Court sustained Mason's Objections in this regard and allowed Ground One to proceed pending the evidentiary hearing to be held by Magistrate Judge Seibert.

### 2.    Ground Fifteen:    Failure to Convey Plea Offer

As Ground Fifteen, Mason claimed that Garrett was ineffective for failing to convey a plea offer, alleging in relevant part:

> It is quite clear from the record that counsel did not measure up to prevailing professional norms when he failed to convey the ples [_sic_] offer. It appears that the greater possibility is that petitioner might have accepted the offer on the day of trial. The petitioner states that he would have accepted the plea offer had he been aware of it.

([Civ. Doc. 1-1; Crim. Doc. 153-1] at 11).

In his Reply, Mason attempted to expand the scope of this claim:

Counsel never prepared for trial and was ineffective for starting trial knowing that he was ill prepared and never mentioned a plea. My previous counsel brought a plea then left the case before we could discuss it and the new attorney never mentioned a plea when he came for trial. I was forced to go to trial with him knowing he was unprepared.

([Crim. Doc. 173] at 8). After framing the claim as alleging that Garrett failed to convey a day-of-trial plea, Magistrate Judge Seibert recommended dismissal of Ground Fifteen based entirely upon a letter from Garrett dated August 14, 2008, outlining a recent plea offer.

As explained above, the Fourth Circuit subsequently questioned Magistrate Judge Seibert's reliance upon an August 14, 2008, letter to reject Mason's claim that Garrett failed to convey an October 27, 2008, plea offer. In explaining its confusion, the Fourth Circuit highlighted the fact-intensive nature of this claim:

And *while it is not entirely clear from the record*, if indeed Mason contends that the Government made multiple plea offers that were not communicated to him, particularly one on the day of trial, then exclusive reliance on the August 14 letter would be insufficient to defeat this claim.

([Civ. Doc. 21; Crim. Doc. 192] at 8-9) (emphasis added).

Therefore, upon careful review of the record, including the Fourth Circuit's decision, this Court concluded that an evidentiary hearing would be necessary to determine the facts underpinning Mason's claim that Garrett failed to convey one or more plea offers. Therefore, this Court sustained Mason's Objection and allowed Ground Fifteen to proceed pending the evidentiary hearing to be held by Magistrate Judge Seibert.

<u>**Revised Report and Recommendation and Petitioner's Objections Thereto**</u>

**I.**

The Fourth Circuit correctly questioned how this Court could propose to reject Mason's claim regarding a plea allegedly offered on October 27, 2008, based entirely on a letter dated August 14, 2008, wherein the Court stated, in part:

> It is impossible to evaluate whether the August 14 letter actually conveyed the then-available plea offer, as the Government contends, or whether it simply offered a generalized discussion of Mason's sentencing exposure, as Mason contends, because the letter is not part of the record. And while it is not entirely clear from the record, if indeed Mason contends that the Government made multiple plea offers that were not communicated to him, particularly one on the day of trial, then exclusive reliance on the August 14 letter would be insufficient to defeat this claim. These uncertainties, coupled with the Supreme Court's recent decision in ***Missouri v. Frye***, 132 S.Ct. 1399, 1408 (2012), holding that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and that counsel's failure to so communicate amounted to constitutionally deficient performance, compel our conclusion that this too is a debatable claim of the denial of a constitutional right.

(Id. at 8-9) (footnote omitted).

With the ***Strickland*** standard already developed, this Court will turn specifically to how the Supreme Court has dealt with plea bargains in the ***Strickland*** arena. There are two lines of cases that have developed regarding plea bargains and their effect on ineffective assistance of counsel claims.

First is the line of cases where an appellant or petitioner claims that counsel provided incorrect advice pertinent to the plea, and that but for that attorney's bad advice the appellant would have chosen to go to trial instead of accepting the plea, or chosen to accept the plea rather than going to trial. *See* **Hill v. Lockhart**, 474 U.S. 52 (1985); **Padilla v. Kentucky**, 130 S. Ct. 1473 (2010); **Lafler v. Cooper**, 132 S.Ct. 1376 (2012). The second line, which has been newly minted by the Supreme Court, involves counsel's failure to convey a plea offer. *See* **Missouri v. Frye**, 132 S.Ct. 1399 (2011). Having now held the evidentiary hearing, the magistrate judge found the petitioner's argument is unavailing under either theory. This Court agrees.

Subsequent to the evidentiary hearing, Magistrate Judge Seibert issued a revised R&R specifically addressing the remaining two challenged grounds. Mr. Garrett testified that, shortly after he was appointed, he called Assistant United States Attorney Erin Reisenweber to determine if the plea was still on the table. After confirming that it was, on August 14, 2008, Mr. Garrett sent Mason a three page letter, which he acknowledged receipt of, in which he discusses the plea and the possible sentencing implications if he were to accept the plea. That letter did, however, recommend that Mason take the case to trial due to a perceived weakness in the Government's case. Moreover, on August 19, 2008, Mr. Garrett met with his client for "the better part of an hour," wherein he testified that he discussed the plea with him. He said that he did not push the plea on Mason, however, because that is the reason why he wanted a new lawyer the first time around. As the trial date approached, counsel changed his recommendation regarding the plea offer. Mr. Garrett testified that he called his client on October 15, 2008, to inform him that his co-

defendant, Travis Latta, had entered into a plea, that he would likely testify as a result of that plea, and that this would likely impact his case. The following day, Mr. Garrett sent Mason another letter stating that, based on Latta's possible testimony, the plea was looking more attractive. Mason denied receipt of this letter. Finally, on October 17, 2008, this Court held a pretrial conference. Mr. Garrett testified that he met with his client on that day at the United States Marshals' lockup, and that he is certain he would have again discussed the plea.

Petitioner also asserts there was a day-of-trial plea offer. The United States, however, proffered at the hearing that no such offer existed, and that the only plea offer ever made was the one made shortly after the charges were brought.

Last, the R&R concludes that trial counsel met his obligation under *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), in that all plea agreements presented by the Government were communicated to Mason. As such, the R&R concludes that trial counsel met his obligations under the Constitution and conveyed and explained each plea agreement that was presented by the Government.

Petitioner objects to this conclusion for the following reasons. First, Mason testified that when trial counsel met with him soon after he was appointed in August 2008, they did not discuss a possible plea agreement or the plea agreement that had been previously presented by the Government. Mason testified that he did not meet with trial counsel again until the day of the pretrial conference in mid-October 2008. Mason testified that he did not discuss a plea agreement with trial counsel at any time during the entire representation from August to October 2008. Second, Mason testified that he never received the letters

that trial counsel sent in October 2008, wherein a plea agreement was discussed.  Again, Mason testified that trial counsel never told him about the co-defendant, Travis Latta, pleading guilty and possibly providing trial testimony against him.

Last, the R&R stated that the Government's attorney testified at the evidentiary hearing that no day-of-trial plea offer was presented in this case.  Petitioner asserts this is clearly erroneous because the Government's lawyer did not *testify* at the evidentiary hearing.  At the evidentiary hearing, the Government's counsel did, however, *proffer* that no day-of-trial plea offer was ever presented.  Without citing to any authority, the petitioner asserts that it is manifest that statements of counsel are not evidence.  Finally, the petitioner is firm in his position that trial counsel failed to communicate plea agreements that had been presented by the Government and that this failure constitutes ineffective assistance of counsel.

In **Frye**, the Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." **Id**. at 1408.  The Court went on to find that "trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims . . . after a trial leading to conviction with resulting harsh consequences." **Id**. at 1408-09.  **Frye** is factually inapposite to the petitioner's claims.  Petitioner was made aware of the one and only plea offer on the table on numerous occasions by two separate lawyers.  In fact, the main reason he wanted to break the relationship with his first counsel, Mr. Barrat, was because that attorney told him it would be wise to accept the offer.  He is now alleging a day-of-trial offer to try and escape from the punishment that resulted.  Because the only formal offer

26

by the Government was conveyed to the petitioner on several occasions, and it was even recommended by both attorneys that he take the offer, the holding in *Frye* is not applicable.

The instant case follows more along the lines of the *Hill* and *Padilla* cases, and another case decided the same day as *Frye*, *Lafler v. Cooper*, 132 S.Ct. 1376 (2012). *Hill* and *Padilla* are also factually inapposite because in both of those cases the client complained of bad advice given that resulted in the client taking the plea. This leaves *Lafler*, which is much more on point. In *Lafler*, counsel advised the defendant not to take a plea because he felt the State could not prove intent to commit the crime charged. *Lafler*, 132 S.Ct. at 1383. Although the petitioner's counsel in this case initially advised him that he should not take the plea that was on the table because he saw a hole in the Government's evidence with regard to intent, counsel later changed that stance after more evidence emerged and suggested, both in person and in writing, that the petitioner take the plea. The petitioner did not accept the plea and was subsequently convicted at trial.

In short, counsel here did everything required by the Constitution. A plea offer was conveyed and explained, and the petitioner was not misled into rejecting a plea offer based on unwise advice of his lawyer. Petitioner cannot now claim that the plea was never offered or that his attorney gave him advice not to take it to escape his conviction. Petitioner has completely failed to show that any such additional plea offers were tendered to defense counsel, or that he failed to convey the same to his client. The petitioner simply offers bald, self-serving statements to this effect. This Court refuses to give such statements any weight. For these reasons, counsel was not deficient, and the petitioner's claims regarding ineffective assistance in the plea bargaining stage must fail. Accordingly,

this Objection is **OVERRULED**.

## II.

The Fourth Circuit Court of Appeals disagreed with this Court's finding that Mason had failed to specify what defense counsel Garrett could have obtained by a more thorough investigation. Accordingly, this information was fleshed out during the evidentiary hearing. The testimony elicited during that hearing follows.

Mr. Mason objects to the R&R's conclusion that trial counsel's performance did not fall below an objective standard of reasonableness because Mason "has not established a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See R&R at 10. The R&R notes that under the performance prong of **Strickland v. Washington**, 466 U.S. 668, 691 (1984), Mason must show that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." The R&R found that Mason could not meet his burden with regard to this portion of the **Strickland** test because had trial counsel procured the housing records from the ERJ, there is no guarantee that the records would have changed the jurors' minds with regard to Clinkscale's testimony about threats he received from Mason and Cecil Ray. The R&R also concluded that Mason did not suffer prejudice here because the Government presented other evidence at trial supporting the element of intent.

The petitioner objects to the R&R's conclusion with respect to these two issues and asserts they are clearly erroneous. Petitioner proceeds to attempt to poke holes in Clinkscale's testimony regarding the interactions at the ERJ. Clinkscale testified that while

he was at the ERJ in August 2008, he had three interactions with Mason. Petitioner asserts that these three interactions were the Government's only direct evidence as to whether Mason had the requisite intent to retaliate against Clinkscale. In sum, Clinkscale testified that while he was housed with Mason in the A pod at the ERJ, Mason threw Clinkscale a note that had been carved into a bar of soap. The note allegedly stated that Clinkscale was a snitch. Second, Clinkscale testified that on either August 28 or August 29, 2007, Mason brought Clinkscale into his cell in the A5 pod so Clinkscale could speak through the cell window with Cecil Ray, who was outside in the A pod recreation yard. Cecil Ray spoke through the cell window and told Clinkscale to change his testimony. Clinkscale testified that Mason remained outside of the cell when this conversation took place. Last, Clinkscale testified that as he was entering the A pod after providing testimony against Cecil Ray, Clinkscale heard someone say that he was a snitch. Clinkscale turned and saw Mason standing in the window of an adjacent pod.

Petitioner's objection argues that the conversation the day before Clinkscale's testimony at Cecil Ray's trial wherein Clinkscale claims that he spoke with Cecil Ray through the cell window simply did not occur that day. Clinkscale testified that this conversation took place the day before he testified. Petitioner asserts that this could not have occurred because Mason was in the SHU the day before Clinkscale testified against Cecil Ray. Thus, the petitioner argues that had trial counsel obtained the housing records from the ERJ he could have easily used these records to impeach Clinkscale's claims. The housing records show that Mason was not housed in the A5 pod the day before Cecil Ray's trial. Thus, he argues that this conversation did not occur that day.

Had trial counsel acquired the housing records, this Court cannot agree that had the defendant impeached Clinkscale, the jury would have concluded that Clinkscale lied about this conversation. As discussed in further detail below, this Court finds the testimony elicited from the evidentiary hearing tends to corroborate Clinkscale's testimony. Thus, this Court does not agree with the petitioner's argument that had Clinkscale been impeached with these housing records, the outcome of the trial would likely have been different. Accordingly, this Court does not find that Mason has suffered prejudice here.

Petitioner next asserts that had trial counsel obtained the housing records, he would have learned that Mason was in the SHU when Clinkscale testified against Cecil Ray. This Court finds the records support this contention. Although the SHU is located next to the A5 pod, inmates are locked down in their cells 23 hours a day. Thus, the petitioner argues the statistical unlikelihood of Clinkscale encountering Mason upon his return from testifying against Cecil Ray.

Lieutenant Bittinger from the ERJ testified at the evidentiary hearing that the A5 pod is located in the hallway before one enters the SHU pods of A6 and A7. Thus, the petitioner concedes it is possible for an inmate to stand in the SHU and see inmates entering the A5 pod. The A5 pod is located before one would arrive at the pod where Mason was housed the day Clinkscale testified against Cecil Ray. Nevertheless, the petitioner argues that it would be highly unlikely that Mason would be standing in the SHU pod and be able to shout in the direction of the A5 pod such that an inmate would be able to hear what that person said. Also, the petitioner argues a person in the SHU would have a difficult time seeing who was coming down the hall and entering into the A 5 pod. This

Court finds these arguments to be highly speculative. Nevertheless, the petitioner again asserts that he could have used these records to show the jury that Clinkscale was lying about the threats from the adjacent pod.

Petitioner also argues that his attorney, Mr. Garrett, failed to investigate his claims that he could not have had the conversations alleged by Clinkscale because he was in the Special Housing Unit ("SHU") during those times. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 668. For the foregoing reasons, this Court finds that the petitioner has not been prejudiced by the potential shortcoming of his attorney.

Again, under *Strickland*, failure to establish either prong is fatal to a claim of ineffective assistance. *Id*. at 700. To show prejudice by a lawyer's deficient performance, the petitioner would have to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 691; *see also* *Tice v. Johnson*, 647 F.3d 87, 102-03 (4th Cir. 2011). Here, there is sufficient evidence to show that investigation into the petitioner's allegations would not contradict Clinkscale's statements to the jury. During the petitioner's trial, Darryl Clinkscale testified to several encounters with the petitioner during the three weeks he was housed at the ERJ for the Cecil Ray trial. First, Clinkscale testified that the petitioner wrote him a note engraved in a bar of soap that said "that dude from Philly is a snitch," which apparently referred to Clinkscale's forthcoming testimony in the Ray trial. (Tr. 50). He further testified

that the petitioner watched him while he read the note, and that he then flushed it down the toilet. (Id.). The next interaction Clinkscale claimed he had with the petitioner was when the petitioner alerted him to Cecil Ray's presence outside the petitioner's cell window, which is adjacent to the recreation yard for the A-pod at ERJ. Clinkscale testified that Ray tried to get him to "switch [his] story up," and that the petitioner stood outside the cell during this conversation. (Id. at 51). Finally, Clinkscale testified that the night he returned from giving his testimony in the Ray trial he heard somebody from the next pod over saying that he had just "told on somebody," and when he looked over he saw the petitioner standing at the door. (Id. at 52).

Petitioner's main contention is that he was in the SHU during all three of these encounters. However, the Inmate Living Unit Listings for the petitioner, Clinkscale, and Ray, do not paint such a clear picture as the petitioner suggests. Specifically, the petitioner and Clinkscale were cell neighbors – above and below – in the same pod section (A5) for a ten-day period from August 13, 2007, to August 23, 2007. Mr. Bittinger, the Chief Corrections Officer at ERJ, testified during the evidentiary hearing that the cell doors remain open during the day so that the inmates can freely come and go and socialize in the common space of the pod. Certainly the incident with the soap note could have happened during this time, and before the two-day trial of Cecil Ray which commenced on August 29, 2007.

Further, Cecil Ray was housed in the SHU, which is located in the A-pod, from August 17, 2007, to August 26, 2007. Mr. Bittinger also testified during the hearing that the A-pod inmates, including those housed in the SHU, recreate in a yard specifically

designated for that pod, and that this recreation yard is adjacent to the cell window in which the petitioner was housed. Further, Bittinger testified that all SHU inmates receive one hour of recreation time per day. Thus, the conversation that Clinkscale claims occurred with Ray through the petitioner's cell window could have happened anywhere from August 17, 2007, to August 23, 2007.

In the final encounter, Clinkscale testified that the petitioner was standing at the door to an adjacent pod when he heard someone say that he was a snitch. Clinkscale testified that this occurred the night he returned from Ray's trial, which could have been August 29 or 30 of 2007. On either of those dates the petitioner was housed in the SHU, which is located in A-pod Section 6, while Clinkscale remained in A-pod Section 5; Section 6 is adjacent to Section 5. Thus, there is a possibility that the conversation Clinkscale heard did in fact occur.

In sum, the petitioner has not established a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." As outlined above, even if the petitioner's lawyer obtained the housing arrangements to present to the jury, and to cross examine Clinkscale, those arrangements appear to support Clinkscale's testimony. Certainly, Mr. Garrett could have cross-examined Clinkscale to try to flesh out any inconsistencies, but this Court cannot say that there is a reasonable probability that this would have changed the jurors' minds.

Mason similarly asserted two claims on direct appeal: (1) this Court erred in denying his motion for judgment of acquittal, because the evidence was insufficient to support his convictions; and (2) this Court abused its discretion in admitting evidence of prior

interactions between Mason and Clinkscale.  In an unpublished *per curiam* Opinion dated April 16, 2010 [Crim. Doc. 145], the Fourth Circuit rejected both claims.  In rejecting the insufficiency of evidence claim, the Fourth Circuit relied in part on Clinkscale's testimony:

> Clinkscale further testified to the three (and only three) interactions he had with Mason prior to the incident underlying this appeal.  These exchanges, which occurred while both men were in custody immediately prior to Ray's trial, all centered around Clinkscale's testimony against Ray.

(Id. at 4).  The Fourth Circuit then rejected Mason's claim that this Court abused its discretion in admitting evidence of these three interactions, explaining:

> Mason's basic defense was that he participated in this crime for no reason.  Therefore, evidence of Mason's prior interactions with Clinkscale, which established Mason's knowledge of Clinkscale's role as a federal witness, was admissible because it was relevant and probative of an issue other than Mason's character.

Having now had the benefit of the evidentiary hearing, this Court finds the above to be even more credible.  Therefore, this Court finds the above has been substantiated to the degree such that "there is [no] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  **Strickland**, 466 U.S. at 668.  Accordingly, the Objection is **OVERRULED**.

## III.

Next, the petitioner argues with the R&R's conclusion that Clinkscale was not the only witness who testified about Mason's intent to retaliate against Clinkscale. The R&R concluded that there was other testimony presented by the Government to show that Mason had the requisite intent to retaliate against Clinkscale. The R&R supports this point by citing the testimony of Mason's co-defendant, Travis Latta. Petitioner asserts that the magistrate judge has committed clear error on this point because a close reading of Travis Latta's testimony reveals that he did not provide direct evidence about Mason's intent on the evening of the shooting.

On direct examination, Latta testified that after Mason and Tank exited the Wal-Mart, where they encountered Clinkscale – and purchased bandanas – he heard them "talking about this person had told on him in some certain something, about something. And he asked Mason to follow him." [Doc. 235-1]. Latta further testified that while in pursuit of Clinkscale, Tank referred to him by name as "D Nice . . . from Philly." D Nice is Clinkscale's pseudonym. Thus, the jury certainly could have believed that Mason knew exactly who he was following. This Court finds this testimony corroborates Clinkscale's testimony from the three encounters at the ERJ.

Let us not lose the forest in the trees. Let it not be forgotten that after testifying to the three events at the ERJ that the Government had outlined in its notice of Rule 404(b) evidence, Clinkscale turned to the night of April 30, 2008. That night, Clinkscale said, he was working a 10:00 p.m. to 7:00 a.m. shift at the Wal-Mart on Foxcroft Avenue, in Martinsburg, West Virginia. Shortly before 2:00 a.m., Mason and another individual

approached him. The other individual asked Clinkscale, "So, what, you work at Wal-Mart now?" Mason and his acquaintance then walked off to the sporting goods section. A few minutes later, at around 2:00 a.m., Clinkscale clocked out for his regular lunch break. When he pulled out, Mason and two passengers followed him. En route to his apartment at Martins Landing, Clinkscale was able to lose Mason. Upon parking his vehicle, and turning the headlights off, Mason pulled in and said, "There he go right there." While Clinkscale pulled out and sped away, he heard about four or five gunshots. Mason followed Clinkscale but then turned onto the interstate. Clinkscale then returned to Martins Landing and called the police. When the police arrived, Clinkscale provided a statement in which he described the vehicle as a silver Lincoln Town Car.

At trial, the Government published three clips of surveillance video from Wal-Mart. The first clip showed Clinkscale being approached inside the store by Mason and another individual. The second clip contained footage of the Lincoln Town Car arriving at the store and Mason and the other individual exiting the vehicle and entering the store. The third clip depicted Clinkscale leaving the store and being followed by Mason and two other individuals in the Lincoln Town Car. As the last topic of direct examination, Clinkscale described the damage done to his car by the gunfire. This Court finds a jury could certainly find beyond a reasonable doubt that the testimony of the victim of the shootings, Clinkscale, together with the video surveilance from Wal-Mart the night of the shootings, shows an intent to retaliate against him.

In his Objections, the petitioner focuses solely on the conversations which took place in the car after they followed Clinkscale out of the Wal-Mart parking lot. Travis Latta

testified that he shot at Clinkscale for no reason.  Latta testified that the third person in the vehicle that evening, "Tank," also shot at Clinkscale.  The testimony cited in footnote three at pages 10 and 11 of the R&R is a discussion between Travis Latta and Tank.  In that discussion, Tank tells Latta why he, Tank, was shooting at Clinkscale.  Thus, the petitioner asserts that at no time during his testimony does Latta say that Mason was retaliating against Clinkscale; rather, Mason was driving the car.  Latta testified that Mason did not tell him to shoot at Clinkscale.  Latta testified that he and Tank were shooting at Clinkscale for no reason.

The Government, however, impeached Latta's testimony with a prior statement wherein he told a police detective that Mason had told him that they were shooting at Clinkscale because he testified against Cecil Ray.  This Court properly instructed the jury that the evidence was not being presented as direct evidence; rather, the evidence was being introduced to "determine whether or not Mr. Latta is being truthful today on the stand. It is not presented as evidence against Mr. Mason."  See Pet's. Ex. 1 at 31.

Latta's testimony that the shooting was Tank's idea was impeached by his statement to Detective Doyle.  In this latter regard, the Government emphasized that the Latta statement was not evidence but that it could be used to weigh the credibility of his trial testimony.  This Court finds such impeachment had a major impact on Latta's credibility. Therefore, this Court finds by no stretch of the imagination that the jury found this impeachment undercut Latta's entire testimony at trial.  For these reasons, the petitioner's Objection is **SUSTAINED** to the extent that Latta did not provide direct evidence tending to prove that the petitioner intended to retaliate against Clinkscale.  However, this Court

does find that the overwhelming impeachment of Latta's testimony so discredited his testimony that the jury completely discounted the same.  Accordingly, the petitioner's Objection is **OVERRULED**.

**IV.**     **Conclusion**

Upon careful review of the record, this Court hereby **ADOPTS** Magistrate Judge Seibert's Report and Recommendation **[Civ. Doc. 32; Crim. Doc. 229]** and Mason's Objections **[Civ. Doc. 24; Crim. Doc. 235]** are hereby **OVERRULED**.  As such, Mason's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody **[Civ. Doc. 1; Crim. Doc. 153]** is hereby **DENIED** and **DISMISSED WITH PREJUDICE**.  Accordingly, this matter is **ORDERED STRICKEN** from the active docket of this Court.  The Clerk is **DIRECTED** to enter separate judgment in favor of the United States.

As a final matter, upon an independent review of the record, this Court hereby **GRANTS** Mason a certificate of appealability on the dismissed claims, finding that he has made "a substantial showing of the denial of a constitutional right" on those claims. 28 U.S.C. § 2253(c)(2).  Therefore, this Court **GRANTS** the petitioner leave to present these theories to the appellate Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** March 27, 2013.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE